UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK


| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) DOCKET NO. 07-CR-288 (WHP) |
| | ) Honorable William H. Pauley, U.S. District Judge |
| BERNARD SANTOS | ) |
| | ) |

SENTENCING MEMORANDUM
ON BEHALF OF DEFENDANT BERNARD SANTOS

By and through counsel, Palmieri and Castiglione, LLP., by Daniel J. Halloran, III, Esq., Defendant Bernard Santos, comes now and files the following Sentencing Memorandum setting forth all factors that the Court should consider in determining what type and length of sentence is sufficient, but not greater than necessary, to comply with the statutory directives set forth in **18 U.S.C. § 3553(a)**.

Defendant appears before the Court pursuant to a written Plea Arrangement with the United States Attorney's Office, dated **September 24, 2007** wherein defendant plead guilty to one count of violating **18 USC §1343**; wire fraud. Said offense is 2B1.1, base offense level 7 points (§2B1.1(A)(2), and because of the amount of money taken ($400,000.00- $1,000,000.00), under §2B1.1(b)(1)(H), upwardly adjusted 14 points.

The Government anticipated a 2 point deduction for acceptance of responsibility through allocution (§3E1.1(a), and 1 point deduction for timely notice of plea (§3E1.1(b), for a total level 18 offense in a Category I Criminal History (no prior criminal involvement).

Said plea was based upon Defendant's forthright admission of guilt, and proffer. The U.S. Attorney's memorandum contained a review of the instant case and plea recommendation, assessing Defendant as a Level I offender at 18 points, subjecting the defendant to potential incarceration of 27 to 33 months.

After entering the plea, the preparation of the **PRE-SENTENCE INVESTIGATION REPORT** dated January 25, 2008, by Nicole L. Guite, United States Probation Officer, called for an assessment of 18 points, and sentencing range of between 27 and 33 months with post-release supervision, a fine and/or restitution, **21 USC §841(b)(1)(B)**; absent a showing of mitigating factors.

**SENTENCING UNDER BOOKER**

On January 12, 2005, the Supreme Court ruled that its Sixth Amendment holding in Blakely v. Washington, 124 S. Ct. 2531 (2004) and Apprendi v. New Jersey, 530 U.S. 466 (2000) applies to the Federal Sentencing Guidelines, United States v. Booker, 125 S. Ct. 738, 756 (2005). Given

the mandatory nature of the Sentencing Guidelines, the Court found "no relevant distinction between the sentence imposed pursuant to the *Washington* statutes in *Blakely* and the sentences imposed pursuant to the Federal Sentencing Guidelines" in the cases before the Court. Id. at 751.

Accordingly, reaffirming its holding in *Apprendi*, the Court concluded that:

> *[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt.*

Id. at 756.1

Based on this conclusion, the Court further found those provisions of the federal **Sentencing Reform Act of 1984** that make the Guidelines mandatory, **18 U.S.C. § 3553(b)(1)** or which rely upon the Guideline's mandatory nature, **18 U.S.C. § 3742(e)**, incompatible with its Sixth Amendment holding. *Booker,* 125 S. Ct. at 756. Accordingly, the Court severed and excised those provisions, "mak[ing] the Guidelines effectively advisory." Id. at 757. Instead of being bound by the Sentencing Guidelines, the **Sentencing Reform Act**, as revised by *Booker*, 1.

It should be noted that the fact-of-prior-conviction exception to the *Apprendi* rule is based on Almendarez-Torres v. United States, 523 U.S. 224 (1998). But the continued vitality of this case and the exception it created has been called into question not only by the broad reasoning of *Booker* itself, which would seem to apply to all enhancement facts, including facts of prior conviction, but also more recently by Shepard v. United States, 125 S. Ct. 1254 (2005).

*Shepard* sharply limits the *Almendarez-Torres* exception to the fact of prior conviction as determined by the judicial record, and excludes facts about the conviction which are not contained in such conclusive records. As Justice Thomas notes, moreover, five justices agree that *Almendarez-Torres* was wrongly decided. 125 S. Ct. at 1264 (Thomas, J., concurring). While it requires a sentencing court to consider Guidelines ranges, see **18 U.S.C.A. § 3553(a)(4)** (Supp.2004), it nonetheless permits the court to tailor the sentence in light of other statutory concerns as well, see **§3553(a),** *Booker*, 125 S. Ct. at 757. Thus, under Booker, sentencing courts must treat the guidelines as just one of a number of sentencing factors set forth in **18 U.S.C. §3553(a).**

The primary directive in **Section 3553(a)** is for sentencing courts to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph 2." **Section 3553(a)(2)** states that such purposes are:

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B) to afford adequate deterrence to criminal conduct;
> (C) to protect the public from further crimes of the defendant; and
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

In determining the minimally sufficient sentence, **§ 3553(a)** further directs sentencing courts to consider the following factors:

>   1) "the nature and circumstances of the offense and the history and characteristics of the defendant" (**§ 3553(a)(1);**
>   2) "the kinds of sentences available" (**§ 3553(a)(3)**;
>   3) "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct" (**§3553(a)(6); and**
>   4) "the need to provide restitution to any victims of the offense." (**§3553(a)(7)**.

Other statutory sections also give the district court direction in sentencing, under **18 U.S.C. § 3582**, imposition of a term of imprisonment is subject to the following limitation: in determining whether and to what extent imprisonment is appropriate based on the **Section 3553(a)** factors, the judge is required to "recogniz[e] that imprisonment is not an appropriate means of promoting correction and rehabilitation" (emphasis added).

Under 18 U.S.C. § 3661, "no limitation shall be placed on the information concerning the background, character, and conduct of [the defendant] which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence" (emphasis added). This statutory language certainly overrides the (now-advisory) policy statements in Part H of the sentencing guidelines, which list as "not ordinarily relevant" to sentencing a variety of factors such as the defendant's age, educational and vocational skills, mental and emotional conditions, drug or alcohol dependence, and lack of guidance as a youth. See **U.S.S.G. § 5H1**. See also United States v. Nellum, **2005 WL 300073, 2005 U.S. Dist. LEXIS 1568** (N.D. Ind. Feb. 3, 2005) (Simon, J.) (taking into account fact that defendant, who was 57 at sentencing, would upon his release from prison have a very low likelihood of recidivism since recidivism reduces with age; citing Report of the U.S. Sentencing Commission, Measuring Recidivism: the Criminal History Computation of the Federal Sentencing Guidelines, May 2004); United States v. Naylor, **F. Supp. 2d , 2005 WL 525409, *2, 2005 U.S. Dist. LEXIS 3418** (W.D. Va. Mar. 7, 2005) (Jones, J.) (concluding that sentence below career offender guideline range was reasonable in part because of defendant's youth when he committed his predicate offenses – he was 17 – and noting that in Roper v. Simmons, **125 S. Ct. 1183, 1194-96** (2005), the Supreme Court found significant differences in moral responsibility for crime between adults and juveniles).

The directives of *Booker* and **§ 3553(a)** make clear that courts may no longer uncritically apply the guidelines. Such an approach would be "inconsistent with the holdings of the merits majority in Booker, rejecting mandatory guideline sentences based on judicial fact-finding, and the remedial majority in Booker, directing courts to consider all of the **§ 3353(a)** factors, many of which the guidelines either reject or ignore." United States v. Ranum, **353 F. Supp. 2d 984, 985-86** (E.D. Wisc. Jan. 19, 2005) (Adelman, J.). As another district court judge has correctly observed, any approach which automatically gives "heavy" weight to the guideline range "comes perilously close to the mandatory regime found to be constitutionally infirm in *Booker*." United States v. Jaber, __ **F. Supp. 2d __, 2005 WL 605787 *4** (D. Mass. March 16, 2005) (Gertner, J.). See also United States v. Ameline, **400 F.3d 646, 655-56** (9th Cir. Feb. 9, 2005) (advisory guideline range is "only one of many factors that a sentencing judge must consider in

determining an appropriate individualized sentence"), rehearing *en banc* granted, **401 F.3d 1007** (9th Cir. 2005).

Justice Scalia explains the point well in his dissent from Booker's remedial holding:

Thus, logic compels the conclusion that the sentencing judge, after considering the recited factors (including the guidelines), has full discretion, as full as what he possessed before the Act was passed, to sentence anywhere within the statutory range. If the majority thought otherwise – if it thought the Guidelines not only had to be 'considered' (as the amputated statute requires) but had generally to be followed – its opinion would surely say so. *Booker*, **125 S. Ct. at 791** (Scalia, J., dissenting in part). Likewise, if the remedial majority thought the guidelines had to be given "heavy weight," its opinion would have said so. The remedial majority clearly understood that giving any special weight to the guideline range relative to the other **Section 3553(a)** factors would violate the Sixth Amendment.

In sum, in every case, a sentencing court must now consider all of the **§ 3553(a)** factors, not just the guidelines, in determining a sentence that is sufficient but not greater than necessary to meet the goals of sentencing. And where the guidelines conflict with other sentencing factors set forth in **§3553(a),** these statutory sentencing factors should generally trump the guidelines. See United States v. Denardi, **892 F.2d 269, 276-77** (3d Cir. 1989) (Becker, J, concurring in part, dissenting in part) (arguing that since **§ 3553(a)** requires sentence be no greater than necessary to meet four purposes of sentencing, imposition of sentence greater than necessary to meet those purposes violates statute and is reversible, even if within guideline range).

**APPLICATION OF THE STATUTORY SENTENCING FACTORS
TO THE FACTS OF THIS CASE**

In the present case, the following factors must be considered when determining what type and length of sentence is sufficient, but not greater than necessary, to satisfy the purposes of sentencing:

     1. The Nature and Circumstances of the Offense and the History and Characteristics of the Offender

         (a)  Nature and Circumstances of Offense

As was confirmed by Probation Mr. Santos finds himself in these circumstances as a result of his addiction to gambling. In fact at the time of his arrest he was found at a casino in Atlantic City. Following in his father's footstep's Mr. Santos became increasingly addicted to gambling over time. It can be said that this addiction also caused the demise of his first marriage. The instant offense demonstrates the depth of the gambling addiction of Mr. Santos. Mr. Santos was deeply in debt with casinos in Atlantic City at the time he began to misappropriate the ING funds. At that time it was also determined that his only child, Adrienne, who he enjoys joint custody of along with her mother, was diagnosed with LUPUS. (Attached hereto and made apart hereof as exhibit "A" are Addriennes' medical records). These medical expenses coupled with his ever

increasing gambling debts caused him to make the bad decision to use ING funds to assist him with his financial problems. Like all addicts he believed that he would ultimately win the money back. Although not an ignorant man he allowed his addiction to cloud his judgment and dilute his reasoning in order to support his gambling habit. I offer this information to the Court not as an excuse but as a background to understand Mr. Santos motivation and to show the severity of his problem and its need for treatment.

The circumstances of this offense clearly indicate that Mr. Santos was not and is not violent. He has not contested the allegations of his wrongdoing, and is not associated with other significant criminal activity. In the instant case there is no collateral violence alleged, nor any third party harm caused, nor any allegations of the same.

The strict application of the guidelines does not serve to promote the interests of justice, nor prevent unwarranted disparities amongst defendants, "the greater the weight given the Guidelines, the closer the Court draws to committing the act that *Booker* forbids", Simon vs. United States, 361 Fsupp2d 589 (EDNY 2005).

    (b) History and Characteristics of Mr. Santos

I believe that the true test of a man's character is not that he may have fallen from "grace" but what he does after he gets up. Nothing I can write here can show the Court Mr. Santos' true character but his actions will speak volumes. Mr. Santos history and character can best be illustrated by the information as confirmed in the pre-sentencing report and the more than twenty letters in his support. (Attached hereto and made apart hereof as exhibit "B" are twenty four letters in support of Mr. Santos). At the time of this offense Mr. Santos was a man who had a long standing addiction to gambling and was struggling with a sick daughter who has a protracted illness, lupus which is both debilitating and incurable. A review of the letters in support of Mr. Santos by his family and friends shows that but for his addiction and his involvement in the instant offense, Mr. Santos is a loving, caring and generous friend, son, sibling and a dedicated father. He enjoys a great relationship with his daughter and even maintains a good relationship with his ex-wife. He has had no other involvement with the criminal justice system and has not even had the need for any Family Court intervention as it relates to his daughter.

Mr. Santos views his arrest as a wake up call and is serious and motivated to beat his addiction. He has sought help for his addiction and attended programs to rid him of his Gambling addiction. He currently continues his treatment with Gamblers Anonymous and has continued contact with the Columbia Gambling Disorder Clinic, although no longer a patient. (See attached hereto and made a part hereof as exhibit "C", a report by Dr. McKee of Columbia Gambling Disorder Clinic along with copies of his attendance and treatment).

In furtherance of his rehabilitation and as additional proof of his commitment Mr. Santos has voluntarily submitted his name for exclusion from all casinos in the State of New Jersey. (attached hereto and made a part hereof as exhibit "D" are the "request for voluntary exclusion from Casino Gambling form").

Lastly, upon his conviction for the instant offense we have also arranged for Mr. Santos to voluntarily consent to a formal bar from association with any Financial Industry Regulatory Authority ("FINRA") affiliated entities.

As the Court can see Mr. Santos has taken action after his fall from grace and made significant strides to change his life. He has gathered significant funds toward restitution, he has sought and received treatment for his addiction and he has taken steps to avoid any future pitfalls by voluntarily barring himself from working in the financial arena and from casino gambling. He has readily admitted his wrong doing. His forthright admissions of guilt and attempt to control his gambling issues are evidence of the man's attempts to overcome the negative social pressures and disparate nature of his circumstances to a positive end.

2. The Need for the Sentence Imposed To Promote Certain Statutory Objectives:

> (A) to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense
> (B) to afford adequate deterrence to criminal conduct
> (C) to protect the public from further crimes of the defendant
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner

While the offense is admittedly serious, in that it is a wire fraud of several hundred thousand dollars, one which the government has a vested interest in deterring, the defendant respectfully submits that the defendant does not present a significant danger to the public requiring more rigorous punishment than that which is already contemplated in the level I designation; there is no history or allegation of violence and no collateral criminal activity alleged or charged. The defendant had entered voluntary gambling treatment which would be in the rehabilitative interest of society as a whole. He supports his child, and has strong familial ties and has taken serious steps to avoid the temptations that now put his future in jeopardy by voluntarily consenting not to work in the financial industry again and by voluntarily banning himself from casino gambling.

So in this case the strict application of the guidelines would not serve to promote the interests of justice, "the greater the weight given the Guidelines, the closer the Court draws to committing the act that *Booker* forbids", Simon vs. United States, 361 FSupp2d 589 (EDNY 2005).

3. The Kinds of Sentences Available

In Booker, the Supreme Court severed and excised **18 U.S.C. § 3553(b),** the portion of the federal sentencing statute that made it mandatory for courts to sentence within a particular sentencing guidelines range. *Booker*, **125 S. Ct. at 756**. This renders the sentencing guidelines advisory. Id. **18 U.S.C. §§ 3551, 3559, 3561, 3571, 3581.**

Accordingly, the Court, while looking to the guidelines, may consider such factors as outlined herein, in arriving at a sentence for the Defendant, which although outside the guidelines still meets the goals of the criminal justice system.

4. The Sentencing Range Established by the Sentencing Commission

The correct guideline range under the provisions of the guidelines, are as outlined in the position of the United States in the Plea Agreement offered to the Defendant. The traditional downward departures that are available under the guidelines and case law to the extent that they permit the defendant a significant benefit for having admitted his wrongdoing and conserved the government's resources by engaging in a proffer and ultimate plea agreement are exceptional factors in this case.

The Federal guideline range does not adequately reflect the defendant's conduct, personal history, and the non-violent nature of the offense as charged and plead herein. The Court may take into account the non-violent, single allegation, and any personal factors the Court deems mitigating in the Defendants life such as the lack of any criminal history, the need for his support to his child who also suffers a life debilitating illness, his willingness to repay the money taken and the treatment and actions he has undertaken to not only address his addiction but to insure that he will not repeat his prior mistakes as a basis for addressing the inadequacies of the guidelines in an outside the guideline sentence.

5. The Need To Avoid Unwarranted Disparities

Any disparity among similarly situated defendants, especially co-defendants or other defendants who have been sentenced in the Eastern District of New York only serve to underscore the need to balance the interest of the Court in meting out justice and allowing defendants to inure some benefit from plea arrangements. The strict application of the guidelines does not serve to promote the interests of either justice, nor prevent unwarranted disparities amongst defendants, "the greater the weight given the Guidelines, the closer the Court draws to committing the act that *Booker* forbids", Simon vs. United States, 361 Fsupp2d 589 (EDNY 2005).

6. The need to provide restitution to any victims of the offense:

Notwithstanding that Mr. Santos has changed several jobs since his arrest, lost his home to foreclosure and dealt with the legal expenses and continued support of his daughter, he has managed to raise with the help of family and friends $85,000.00 towards the repayment of the $523,105.58 taken. His continued employment will make it possible for him to more quickly assemble the money necessary to make ING whole. Such restitution is in the interest of the Court and society as it will help to both rehabilitate Mr. Santos as well as make whole the victim corporation.

**Proposed "Statement of Reasons Pursuant to 18 U.S.C. § 3553(c)" for sentence below guideline range.**

Thus, the Court should find, after considering the recited factors pursuant to **18 U.S.C. § 3553(c)**; namely: a) that the defendant has admitted his guilt by his plea and taken responsibility for his actions; b) that pursuant to the Plea Agreement, the U.S. Attorney, outlining the range of 27-33 months as the applicable period of incarceration, for a Category I offender, permitted the introduction of such §3553 issues that may bare on the need to sentence outside the guidelines under that Agreement; c) given the Defendant's lack of criminal history, along with the non-violent circumstances of this offense; d) there being no other allegation of uncharged criminal

acts of which he is alleged to have engaged in; e) the defendant's ready admissions of guilt in prior offenses (such prior offenses having similarly been plead to by the defendant); f) the need to encourage defendants to engage in plea negotiations to a favorable disposition warranting a similar and not disproportionate sentence for such persons; g) the familial circumstance that strained Mr. Santos, including the protracted illness of his daughter; h) the recognition of the otherwise rehabilitative acts of defendant in entering a gambling treatment program and the voluntary barring from financial employment and gambling casinos and overall lack of significant threat to society as a whole, it is respectfully requested that the Court exercise it's full discretion, as full as what was possessed before the Sentencing Act was passed, to sentence below the statutory range, for defendant's plea of guilty as a level I offender.

Finally, as the defendant admitted his wrongdoing and voluntarily entered into an agreement with the United States to plea this case out. Mr. Santos should be entitled to rely on the terms afforded in that agreement, which subjected him to 27-33 months incarceration for his contrite and forthright admission. Should this Court find that such agreement should not be a significant guiding force in the sentence meted out, then it will serve to invalidate the public policy behind plea bargaining, and the result will be no regard for the little benefit to entering into such agreements, which in turn will discourage cooperation and future plea arrangements with other similarly situated defendants.

For the foregoing reasons, that defendant BERNARD SANTOS respectfully submits that although a sentence of 27-33 months is sufficient, but not greater than necessary, to comply with the statutory directives set forth in **18 U.S.C. § 3553(a), we would respectfully request that the Court consider Mr. Santos special circumstances regarding his daughter and all of the arguments made herein in sentencing him to an outside the guideline sentence of either house arrest, should the Court deem that incarceration is necessary, or probation or any combination of thereof.**

### Conclusion

For the foregoing reasons, BERNARD SANTOS respectfully submits that a sentence of probation is sufficient, but not greater than necessary, to comply with the statutory directives set forth in **18 U.S.C. § 3553(a).** Defendant also requests that the Court recommend that the Defendant be required to continue his treatment for Gambling addiction and complete restitution to ING.

Respectfully submitted,

**PALMIERI & CASTIGLIONE, LLP.**

_____
Daniel J. Halloran, III, Esq. (DH-4797)
*Attorneys for Defendant Bernard Santos*
250 Mineola Boulevard
Mineola, New York 11501
(516) 248-9595
(516) 248-7897
dhalloran@pcllp.com

# AFFIDAVIT OF SERVICE

STATE OF NEW YORK   )
                    )SS:
COUNTY OF NASSAU    )

DARLENE JIMENEZ, being duly sworn, deposes and says:

I am not a party to this action, am over eighteen years of age and reside at Aquebouge, New York.

On the 9th day of April, 2008, I served a true copy of the annexed **MEMO** in regards to, U.S.A. vs. BERNARD SANTOS. Index 07-CR-388-01 (WHP), in the following manner:

By placing properly addressed, wrapped envelopes, having affixed proper postage to said envelopes, and then depositing same in a container under the exclusive care and custody of the United States Post Office, as regular, First Class, U.S. Mail.

TO:   Clerk of U.S. District Court, Southern District      Hon. William H. Pauley, III, Judge
      500 Pearl Street                                     500 Pearl Street
      New York, NY 10013                                   New York, NY 10007

      Margaret Garnett, Esq.
      Assistant United States Attorney
      One St. Andrews Plaza
      New York, New York 10007

_____
DARLENE JIMENEZ

Sworn to before me this
9th day of April, 2008.

_____
        Notary Public